UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |   | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No. 3:20-CR-21 | |
| | ) | (VARLAN/POPLIN) | |
| ANMING HU, | ) | | |
| | ) | | |
| Defendant. | ) | | |

## OPINION AND ORDER

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case came before the Court on March 3, 2020 for a hearing under the Bail Reform Act, 18 U.S.C. § 3142(f), on the Government's motion to detain Defendant Anming Hu based on the risk of flight. Assistant United States Attorneys Casey Arrowood and Frank Dale, Jr. appeared on behalf of the Government. Attorney Philip Lomonaco represented Defendant, who was also present.

Based upon the evidence proffered at this hearing, the Amended Pretrial Services Report presented by the United States Probation Office ("USPO"), and the arguments of counsel, the Court finds that the Government has established the threshold condition for holding a detention hearing under the Bail Reform Act—that Defendant is a serious risk of flight under 18 U.S.C. § 3142(f)(2)(A); however, the Court concludes that the Government has failed to meet its burden of establishing that there is no condition or combination of conditions that will reasonably assure Defendant's appearance based on the current record.

## I. BACKGROUND AND SUMMARY OF THE TESTIMONY

On February 25, 2020, Defendant was charged in a six-count Indictment [Doc. 3] with three counts of wire fraud, in violation of 18 U.S.C. § 1343, and three counts of making false statements in a matter within the jurisdiction of the executive branch of the United States, in violation of 18 U.S.C. §§ 1001 and 1002. Defendant was arrested on February 27, 2020, and his initial appearance was held the same day. [Doc. 5]. The Court determined that Defendant did not meet the requisite financial qualifications for appointed counsel, and thus, appointed the Federal Defender Services of Eastern Tennessee only for purposes of conducting the initial appearance and until Defendant was able to secure retained counsel. The Government moved for detention on the grounds that Defendant is a serious flight risk under 18 U.S.C. § 3142(f)(2), and Defendant requested that a hearing be scheduled. The Court scheduled Defendant's arraignment and detention hearing for March 3, 2020, giving him time to secure substitute counsel. Defendant subsequently retained Attorney Lomonaco.

At the March 3, 2020 hearing, the Government confirmed that no presumption of detention applied in the case and that it was moving forward with its detention motion solely on the ground that Defendant is a serious flight risk under § 3142(f)(2)(A). In the Amended Pretrial Services Report, the USPO recommended detention due to a risk of non-appearance based upon a potential unstable residence situation, unexplained assets, ties to a foreign country, and lack of significant ties to the community.

The Government presented the following documents: records from the U.S. Department of Homeland Security, U.S. Customs and Border Protection ("DHS/CBP") showing Defendant has left the country fifteen times from 2017 through the present, including ten visits to Canada and two visits to China [Govt. Exh. A-1]; and a DHS/CBP Secondary Inspection Report of an incident

on October 15, 2015 involving Yi Yang, Defendant's wife, and her mother being stopped driving across the border into the United States from Canada wherein the Defendant's wife was found with $9,000 in cash and her mother was carrying $9,800 in cash [Govt. Exh. A-2]. The Government additionally presented photographs of numerous items seized during the search of Defendant's residence on the day of his arrest, including 1) two Beijing University of Technology Institute of Laser Engineering business cards, one in English and one in Mandarin, bearing Defendant's name [Govt. Exhs. B-1; B-2]; 2) Defendant's current Canadian Passport with pages depicting six different Chinese visas from August 27, 2013 through June 5, 2018 [Govt. Exhs. B-3–B10]; 3) a bag with contents containing a thumb drive, several business cards, and five booklets [Govt. Exh. B-11], which contained Defendant's Beijing Work and Residence Certificate for High-Caliber Talent from Overseas[1] [Govt. Exh. B-12–B-13] and four expired Chinese Passports, with the most recent expiration date in 2017 [Govt. Exh. B-14]; 4) six bank cards with several showing association with Canadian banks [Govt. Exh. B-15]; and a June 2018 Retirement Account Investment Statement from Royal Mutual Bank in Waterloo, Ontario showing a balance of approximately $56,000.00 [Govt. Exh. B-16].

Defendant presented the testimony two witnesses, who he proposed to serve as third-party custodians. First, Liang "David" Hu, Defendant's son, testified that he was a student at the University of Tennessee, Knoxville, majoring in computer science. He stated that he lived in a dorm on campus, but occasionally stayed with Defendant at the family residence, which was purchased by his parents in September 2015 [Def. Exh. 2]. He detailed that the family residence was purchased for $360,082.00 on September 30, 2015, had a current appraisal value of

---

[1] The Government detailed that although not depicted in the exhibit, subsequent pages of the booklet established that Defendant's Work and Residence Certificate expired in either 2013 or 2014.

$450,000.00, and a remaining mortgage balance of $196,472.97. [Def. Exh. 1]. While David Hu had been making plans to transfer to Ohio State University, he now plans to stay in Knoxville and is willing to move into the family residence with Defendant and serve as third-party custodian, understanding he would have the legal responsibility to notify the United States Marshals Service ("USMS") if Defendant attempted to flee. He stated that Defendant travels to visit his mother and two siblings, who live in Canada, and that Defendant engages in other international travel, due to his position as a scientist.

On cross examination, David Hu acknowledged that he listens to his father and does what Defendant tells him to do. He also explained that his parents have been separated since 2017. With regard to Defendant's foreign travel, David Hu testified he was aware that his father had travelled to Beijing, with the most recent visit having occurred two years ago for a period of less than two months. However, he was not certain whether Defendant had family or any business interests in Beijing, or whether Defendant had any affiliation with Beijing University.

Next, Defendant called Doming Hu, who he also proposed as a third-party custodian. Doming Hu explained that while he shares the same last name with Defendant, they are not related. He further explained that he knows Defendant from attending the same church, Knoxville Chinese Christian Church, where Defendant has attended since moving to Knoxville.[2] Doming Hu testified that he is a software developer with a PhD in mechanical engineering. He came to the United States in 1998 and is a naturalized citizen. He currently lives in the same subdivision as Defendant—within less than five minutes walking distance of Defendant's residence. Doming Hu stated that he was willing to serve as a third-party custodian, checking on Defendant daily and

---

[2] The Amended Pretrial Services Report notes that Defendant moved to Knoxville in November of 2013.

notifying the Court if Defendant leaves town. He testified about Defendant's character and his connection with the community of church friends, stating that he believes that Defendant is an honest person. On cross examination, Doming Hu testified that Defendant has previously discussed his affiliation with the Beijing University of Technology during church fellowship. Further, Doming Hu stated that he was familiar with the university because it was close to his mother's house in Beijing.

In addition to David Hu and Doming Hu, Defendant also proffered another individual, Yun Qiao Pu, as a potential third-party custodian. It was represented that Mr. Pu also lives in the same subdivision as Defendant and had expressed willingness to serve as in the third-party custodial capacity. When questioned by the Court as to why Mr. Pu was not present at the hearing, it was stated that his employment would not allow him to be present on such short notice. It was offered that Yun Qiao Pu's phone number could be provided to the USPO.

Finally, Defendant submitted a letter dated March 2, 2020 from attorney, Kate E. Tucker of Kramer Rayson LLP, to Defendant explaining his current immigration status. [Def. Exh. 3]. In sum, the letter states that Defendant is currently in "valid status by virtue of having filed an application for permanent residency (i.e. Adjustment of Status Application), which. . . is still pending." [*Id.* at 1]. Ms. Tucker explains that Defendant's I-140 Immigrant Petition in the Employment-Based First Preference ("EB-1") category of "Outstanding Researcher" was approved on February 26, 2018, and a copy of the Approval Notice is attached. She further explains that Defendant has completed all steps of the Adjustment of Status Application, the procedural part of the process, which is now eligible for final adjudication. [*Id.* at 2].

After the parties concluded their arguments, the Court took the matter under advisement. On March 4, 2020, the Court briefly reopened the hearing to request that the USPO conduct an

inspection of Defendant's residence, particularly as to the suitability for an electronic monitoring system and continued the hearing to May 6, 2020, for the Court to receive the USPO's report.

## II.  POSITIONS OF THE PARTIES

During the detention hearing, the Government stated that it agreed with the USPO's recommendation that Defendant poses a serious risk of flight.  The Government asserted that the facts set forth in the Amended Pretrial Report with regard to home detention indicate that Defendant may not be able to afford his current living situation, and the USPO's recommendation of detention is supported by the history and characteristics of the Defendant and the nature and circumstances of the offense.

The Government proffered evidence demonstrating that Defendant has significant connections to foreign countries, particularly Canada and China, as he has a home in Canada where his wife and other two children reside and has engaged in significant overseas travel, including fifteen times from 2017 through the present date.  The Government detailed the following regarding Defendant:  he is not a United States citizen; he possesses a valid Canadian passport with six Chinese visas; a search of Defendant's home uncovered several expired Chinese passports; he is fluent in Mandarin; and he self-identifies with the Beijing University of Technology, where he is alleged to be working as a professor, supervising students as well as a lab.  Additionally, the Government proffered that Defendant was previously a member of the People's Republic of China Talent Plan, a government sponsored recruitment program for individuals with success in the scientific field.

The Government argued that Defendant's connections to Canada and China are more concerning in light of his limited community ties to the Eastern District of Tennessee, other than his son and his job at the University of Tennessee, from which he has been suspended.  With

respect to Defendant's ability to flee, the Government argued that Defendant may have means to flee due to the presence of foreign bank accounts and that that the United States does not have an extradition treaty with the People's Republic of China

When reviewing the nature of the offense, the Government detailed the listed charges in the Indictment [Doc. 3] and claims that these offenses are suggestive of a risk of flight. The Government reviewed that Defendant is charged with engaging in a scheme to defraud the National Aeronautics and Space Administration ("NASA") by falsely representing and concealing his representation with a Chinese university. Further, the Government stated that the Indictment alleges that Defendant worked for and self-identified with the Beijing University of Technology through research publications, patent applications, and certain resumes; Defendant supervised graduate students and the operation of a laboratory; and Defendant worked on research projects funded by the Chinese government, all while employed by the University of Tennessee. Therefore, the Government argued that the evidence in the present case is strong through Defendant's email and travel records, documents and interviews from the University of Tennessee and Marshall Space Flight Center and Jet Propulsion Lab, and publicly available websites detailing research papers authored by Defendant.

In response, Defendant asserted that he is not facing significant jail time from the charges alleged in the Indictment,[3] has no criminal history, and that if he fled, he would face more jail time than if convicted of the charged offenses. Further, Defendant claimed that he is a hardworking individual with two PhDs and detailed that much of his extensive foreign travel is as a result of his

---

[3] The Court notes that Defendant faces a maximum penalty of twenty years imprisonment for Counts One, Two, and Three, as well as a maximum penalty of five years imprisonment for Counts Four, Five, and Six. However, Defendant appeared to argue about the potential sentencing range upon conviction, and the Government did not rebut Defendant's argument.

work either for lectures or conferences, and therefore his past travel is not indicative of future conduct.  Defendant stated that the application for grants which led to the charged offenses resulted in money going directly from the Jet Propulsion Lab to the University of Tennessee, rather than to his benefit.  Defendant also pointed to the current equity in his home, as well as significant local and community support from his church and son.  With respect to proposed conditions, Defendant asserted that conditions could be fashioned to ensure his appearance, including wearing an electronic monitor, offering his house as a bond, and through the proposed third-party custodians.  Defendant also proffered potential employment at the Asian Kitchen restaurant.

### III. APPLICABLE PROVISIONS OF THE BAIL REFORM ACT

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).  The Supreme Court has held that "the provisions for pretrial detention in the Bail Reform Act of 1984 fall within that carefully limited exception." *Id.*  Congress enacted the Bail Reform Act ("the Act") in order "to ensure the appearance of criminal defendants at judicial proceedings." *United States v. Veloz-Alonzo*, 910 F.3d 266, 270 (6th Cir. 2018) (observing that assuring appearance at trial is one of the "primary purposes" of the Act).  Additionally, the Act serves "to safeguard the courts' role in adjudicating the guilt or innocence of defendants[.]" *Salerno*, 481 U.S. at 753.  The Act provides four options to the judge presiding over an initial appearance in a criminal case:  (1) release the defendant on his or her own recognizance; (2) release the defendant on conditions; (3) detain the defendant temporarily "to permit revocation of conditional release, deportation, or exclusion"; or (4) detain the defendant until trial, if the judge finds, after a hearing, that "no condition or combination of conditions will reasonably assure" the defendant's appearance or the safety of others.  18 U.S.C. § 3142(a) & -(e)(1).

8

The Act permits the government attorney to move for pretrial detention of a criminal defendant in a limited number of circumstances. The government may request detention when the defendant is charged with a crime of violence, § 3142(f)(1)(A); an offense involving a maximum penalty of ten years or more in prison, § 3142(f)(1)(B); any felony if the defendant's criminal history includes convictions of two or more specific crimes, § 3142(f)(1)(C); or a felony involving a minor victim or the possession or use of firearms, § 3142(f)(1)(D).

None of those circumstances apply in this case. The Government concedes that the Defendant has not been charged with an offense which triggers a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(3)(E).

The government may also request detention if the case involves "(A) a serious risk that [the defendant] will flee; or (B) a serious risk that [the defendant] will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f)(2). In the instant case, the Government moves for detention, arguing pursuant to section 3142(f)(2)(A) that Defendant poses a serious risk of flight.

The government bears the burden of proving a defendant is a flight risk by a preponderance of the evidence. *United States v. Sanchez-Rivas*, 752 F. App'x 601, 604 (10th Cir. 2018) (citing *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003)); *see, e.g.*, *United States v. Anderson*, No. 1:10-MJ-9010, 2010 WL 3222041, at *2 (N.D. Ohio Aug. 12, 2010) (noting "the judicial officer determines the existence of these conditions [triggering a detention hearing under 18 U.S.C. § 3142(f)(2)] by a preponderance of the evidence" and citing to *United States v. DeBeir*, 165 F. Supp. 2d 592, 595 (D. Md. 1998) and *United States v. Carter*, 996 F. Supp. 260, 265 (W.D.N.Y. 1998) addressing a serious risk of flight).

9

## IV. ANALYSIS

Initially, the Court finds that a detention hearing is appropriate in this case, because the Government has shown by a preponderance of the evidence that Defendant presents a serious risk of flight under 18 U.S.C. § 3142(f)(2)(A). The Government has detailed Defendant's significant connections to foreign countries, including Canada and China, access to foreign bank accounts, and extensive history of international travel. Therefore, the Court must now determine "whether there are conditions of release that will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and the community[.]" 18 U.S.C § 3142(g). In making this determination, the Court must consider the available information relating to (1) the nature and circumstances of the charged offense; (2) the weight of the evidence against the Defendant, (3) the Defendant's history and characteristics, and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [Defendant's] release." 18 U.S.C § 3142(g)(1)-(4).

### A. Nature and Circumstances of the Charged Offenses

As to the nature of circumstances of the offenses charged, Counts One, Two, and Three of the Indictment [Doc. 3] charge Defendant with wire fraud in violation of 18 U.S.C. § 1343, while Defendant is charged in Counts Four, Five, and Six with making false statements in a matter within the jurisdiction of the executive branch of the United States, in violation of 18 U.S.C. §§ 1001 and 1002. The underlying facts supporting the charges include a substantial connection with a foreign government, in that Defendant is alleged to have engaged in a scheme to defraud NASA by concealing his representation with the Beijing University of Technology in connection with grant applications submitted through his employment with the University of Tennessee, Knoxville. As the Court has previously detailed, while Defendant argued that he was not facing a lengthy

10

sentence, the Government advised that the potential range of penalty was twenty years imprisonment for Counts One, Two, and Three of the Indictment. *See United States v. Xiaorong You*, No. 2:19-cr-14, 2019 WL 2426659, at *3 (E.D. Tenn. June 10, 2019) ("Defendant's lengthy sentence provides a motive to flee internationally.") (Greer, J.). Therefore, the nature and circumstances of the charged offense weigh slightly in favor of detention.

### B. Weight of Evidence against the Defendant

Next, the Court considers the weight of the evidence against Defendant regarding the risk of flight under 18 U.S.C. § 3142(g)(2). "The weight of the evidence factor goes to the weight of the evidence of flight risk, not the weight of the evidence of the defendant's guilt." *United States v. Ho*, No. 3:16-CR-46-TAV-HBG-1, 2016 WL 5875005, at *7 (E.D. Tenn. Oct. 7, 2016) (citing *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010)), *aff'd sub nom.*, *United States v. Szuhsiung Ho*, No. 16-6561, 2016 WL 10077327 (6th Cir. Dec. 9, 2016).

Again, the Court notes that the underlying facts of the charges include a substantial connection with a foreign government—China, as well as that Defendant is a Canadian citizen with a wife and two children remaining in Canada. Although not discussed in great detail at the hearing, Defendant has the means to travel internationally, as DHS/CBP records reflect that he has left the United States fifteen times from 2017 through the present. Further, law enforcement found various foreign passports during the search of Defendant's residence, although only his Canadian passport is not currently expired, as well as credit cards from Canadian banks and a bank statement from the Royal Bank of Canada. *See, e.g.*, *Ho*, 2016 WL 5875005, at *6–7 ("The Court finds that there is substantial evidence the defendant has significant financial resources, particularly in China. The Court finds that this fact, coupled with the defendant's ties to other countries, is strong evidence that the defendant has both the motive and the means to flee."). The Government also

11

introduced pictures of Defendant's business cards indicating his affiliation with the Beijing University of Technology, and should Defendant flee to China, the Government would have no recourse because the United States does not have an extradition treaty with China.

However, mitigating factors with respect to the weight of the evidence against Defendant include that Defendant has an immediate family tie to the Eastern District of Tennessee, as he owns a home in the District and his son is currently enrolled at the University of Tennessee. Additionally, Defendant states that much of his international travel was work-related for lectures or conferences. Lastly, Defendant has strong support from his church, as Doming Hu and Yun Qiao Pu both offered to serve as potential third-party custodians.

Although there are some mitigating factors, overall the weight of the evidence of Defendant's risk of flight is substantial. Defendant has continued significant ties to both Canada and China and access to foreign bank accounts. Accordingly, the Court concludes that the weight of the evidence against Defendant favors detention.

### C. Defendant's History and Characteristics

When addressing Defendant's history and characteristics, the Court reviews his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings under 18 U.S.C. § 3142(g)(3).

Here, the Court notes that Defendant does not have a criminal history, he is 51 years old, and has been in Knoxville for approximately six and a half years. Defendant was born in China, is now a Canadian citizen, and is currently in valid status in the United States after filing an application for permanent residency, which is still pending. Defendant has two PhDs and was most recently employed by the University of Tennessee, Knoxville as a Professor of Mechanical

Engineering, although he is presently suspended from his employment. Defendant's wife resides in Canada with two of their children, and Defendant's son, David Hu, stated during the detention hearing that Defendant and his wife were separated.

Additionally, David Hu expressed during the detention hearing that although he had previously planned to transfer to another university, he would be remaining in Knoxville and was willing to move into Defendant's current residence if Defendant was released. Defendant has been in Knoxville since November of 2013, and has developed strong ties with his local church, of which many members were present for his March 3, 2020 detention hearing. Although the Court has discussed Defendant's access to credit cards and a bank account in Canada, and Defendant has some equity in his home, the Court also notes that Defendant is currently suspended without pay from his current employment. Ultimately, considering the totality of the circumstances, the Court finds that Defendant's history and characteristics do not demonstrate by a clear preponderance of the evidence that Defendant has the financial resources, proclivity, and incentive to flee rather than risk a prison sentence.

### D. Nature and Seriousness of the Danger to the Community

Lastly, the Court considers the potential danger that Defendant poses to any person or the community under 18 U.S.C. § 3142(g)(4). Here, the Government does not allege that Defendant poses a danger to any person or the community. Moreover, this factor has little bearing in the Court's analysis as the requested detention is based upon Defendant's risk of flight. *See United States v. Vo*, 978 F. Supp. 2d 41, 46 (D.D.C. 2013) (finding that where detention is based on risk of flight, "[t]his factor . . . has little bearing"). Therefore, to the extent that this factor is applicable, it weighs in favor of release.

### E. Potential Conditions of Release

As previously detailed, the Court finds that the Government has established by a preponderance of the evidence that Defendant poses a serious risk of flight. However, after considering the § 3142(g) factors, along with the arguments and testimony presented at the detention hearing and the information in the Amended Pretrial Services Report, the Court finds that a combination of conditions of release exist that will reasonably assure Defendant's appearance as required.

While the Government has detailed Defendant's financial resources, as well as international connections, the Government has not established by a clear preponderance of the evidence that Defendant is a flight risk for which conditions cannot address. *See United States v. Gibson*, 384 F. Supp. 3d 955, 965 (N.D. Ind. May 28, 2019) (noting that "serious risk of flight" is "only what allows the government to move for detention in this case," and Congress then "mandated that courts look to whether the government has met its burden to show that there is no condition or combination of conditions that will 'reasonably assure the appearance of the person as required'") (citing 18 U.S.C. § 3142(g)). The Sixth Circuit has stated that it is "the government's ultimate burden is to prove that no conditions of release can assure that the defendant will appear and to assure the safety of the community." *United States v. Stone*, 608 F.3d 939, 946 (6th Cir. 2010). Ultimately, conditions of release are not intended to provide surety of a defendant's appearance, but rather a reasonable mitigation.

The Court does not find any of the proposed third-party custodians—David Hu, Doming Hu, or Yun Qiao Pu—as suitable in this case. The Court was not convinced that Defendant's son, David Hu, would exercise independent judgment in a supervisory role over his father, and did not feel that Doming Hu was sufficiently familiar with Defendant or able to appropriately monitor

14

whether he was abiding by conditions of release set forth by the Court. Additionally, no information was provided with respect to Mr. Pu in order to determine his suitability. However, while no suitable individual third-party custodian exists at this time, it appears that Defendant has strong connections and support from his church community and his son.

As Defendant currently has no employment or a suitable third-party custodian, the only condition that the Court feels would be appropriate under the circumstances to reasonably assure his appearance is home confinement/incarceration with electronic monitoring, in connection with the other conditions set forth in the Court's order of release. The Court notes that Defendant will be forced to surrender his passport, thus reducing the risk of his ability to escape to either Canada or China. Further, Defendant does not have any criminal history, and the conditions set forth by the Court will severely hinder his potential access to foreign funds and the ability to flee. Moreover, any attempt by Defendant to flee would result in more severe punishment. While Defendant has a substantial asset in his home and the equity therein, which could potentially be a source of funds for his flight, Defendant is instructed not to take any action regarding his home, such as attempting to sell it, without advising the USPO. Moreover, Attorney Lomonaco represented at the March 4, 2020 hearing that Defendant's wife, Yi Yang, was present at the hearing and intended to assist Defendant in paying the mortgage on his residence, if necessary.

Ultimately, the risk of flight is theoretical in the present case, as the Government has failed to demonstrate that Defendant was both "a risk of nonappearance *and* that there were no conditions or combinations [of conditions] that would reasonably assure his appearance as required." *See Gibson*, 384 F. Supp. 3d at 966. Here, the Court finds that home detention and electronic monitoring, in connection with the other conditions set forth in the Court's order of release, will reasonably mitigate the risk that Defendant will flee.

## V. CONCLUSION

Accordingly, the Court hereby **DENIES** the Government's oral motion to detain pursuant to 18 U.S.C. § 3142(f)(2)(A), and **ORDERS** that Defendant Anming Hu shall be **RELEASED** pending trial subject to the conditions set forth in the accompanying order setting conditions of release.

**IT IS SO ORDERED.**

ENTER:

Debra C. Poplin
United States Magistrate Judge