UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANMING HU | Case No. 3:20-CR-21<br><br>JUDGES VARLAN/POPLIN |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE INDICTMENT**

The United States of America, by J. Douglas Overbey, United States Attorney for the Eastern District of Tennessee, hereby offers this response in opposition to the defendant's Motion to Dismiss Because Void from Vagueness and to Dismiss under Fed. Rule Crim. Pro. 12(b) Based on Entrapment by Estoppel, (R. 34, 35, 36).[1]

The defendant's Motion seeks dismissal of the charges contained in the Indictment on two grounds. First, the statutory prohibition on the National Aeronautics and Space Administration's ("NASA") use of appropriated funds to participate, collaborate, or coordinate bilaterally in any way with China or any Chinese-owned company ("NASA's China Funding Restriction") is unconstitutionally vague as applied in this case. Second, the defendant reasonably relied on a statement by an authorized official that his conduct was legal.

In his "void for vagueness" argument, the defendant contends that NASA's China Funding Restriction is vague as it has been applied in this case for two main reasons: (1) NASA changed its process for ensuring compliance with the Restriction in September 2012, and (2) the

---

[1] On June 26, 2020, the defendant filed the motion (R. 34), brief in support of the motion (R. 35), and accompanying exhibits (R. 35-1 to 35-10). On June 30, 2020, the defendant filed an amended brief in support of the motion (R. 36). The government's response in opposition addresses the arguments made by the defendant in his amended brief in support of the motion.

defendant received an email from a university employee in January 2016 indicating that NASA's China Funding Restriction did not apply to the defendant. Since the defendant has not been charged with violating NASA's China Funding Restriction, the defendant's contention relies on the faulty premise that knowledge of NASA's China Funding Restriction is an element of the charged offenses that the government must prove at trial. It is not.

The defendant further argues that dismissal of the charges is warranted because he reasonably relied on a statement from an authorized official that his conduct was legal. This "entrapment by estoppel" argument fails at this stage in the proceedings because an indictment need not address affirmative defenses such as entrapment by estoppel, and a motion to dismiss is an improper vehicle to resolve disputed issues of fact.

The heart of the Motion to Dismiss is the defendant's argument that the government lacks sufficient evidence to prove beyond a reasonable doubt that the defendant possessed the requisite specific intent to convict him of the charged offenses. Notwithstanding that the defendant describes his arguments under "vagueness" and "estoppel" language, the Motion to Dismiss squarely argues that the defendant lacked criminal intent. The Motion should be recognized for what it is—an attempt to have this Court make a pretrial ruling as to the sufficiency of the government's evidence on an element of the charged offenses, an issue that should be left to the trier of fact. The Motion to Dismiss should be denied.

## ALLEGATIONS IN THE INDICTMENT

On February 25, 2020, a Grand Jury in the Eastern District of Tennessee returned an Indictment charging the defendant, Anming Hu ("Hu"), with three counts of wire fraud in violation of 18 U.S.C. § 1343 and three counts of false statements in violation of 18 U.S.C. § 1001. (R. 3.)

The Indictment alleges that Hu was an Associate Professor in the Department of Mechanical, Aerospace, and Biomedical Engineering at the University of Tennessee, Knoxville ("UTK"). Hu joined the UTK faculty in November 2013. As part of his job at UTK, Hu performed research under grants funded by U.S. government agencies, including NASA. (R. 3, ¶ 4.)

The Indictment also alleges that under NASA's China Funding Restriction, NASA was prohibited by federal law from using appropriated funding to enter into or fund any grant or cooperative agreement of any kind to participate, collaborate, or coordinate bilaterally in any way with China or any Chinese-owned company. NASA defined "China or any Chinese-owned company" to include Chinese universities because Chinese universities are considered to be incorporated under the laws of the People's Republic of China ("PRC"). (R. 3, ¶¶ 2, 3.)

The Indictment further alleges that beginning in 2013 and continuing through the unsealing of the Indictment, Hu was also a faculty member at the Beijing University of Technology, Institute of Laser Engineering in Beijing, China ("BJUT"). As alleged in the indictment, Hu was identified as BJUT professor on BJUT's website; and Hu self-identified as a BJUT professor in research publications, patent applications in the PRC, and certain of his curricula vitae. (R. 3, ¶¶ 8-10, 22.) Hu also supervised BJUT graduate students, made decisions about whether to accept graduate students at BJUT, supervised the operation of a laboratory at BJUT, and worked on PRC-sponsored projects at BJUT. (R. 3, ¶¶ 11-20, 22.)

As alleged in the Indictment, beginning in 2016, Hu engaged in a scheme to defraud NASA by falsely representing and concealing his affiliation with BJUT to UTK. Through these representations and omissions to UTK about his affiliation with BJUT, Hu caused UTK to falsely certify to NASA and to NASA contractors that UTK was in compliance with NASA's

China Funding Restriction regarding NASA-funded projects that UTK sought and obtained on Hu's behalf. (R. 3, ¶ 21.)

The indictment further alleges three specific instances of wire fraud occurring on or about October 20, 2016 (Count One); November 12, 2018 (Count Two); and August 30, 2019 (Count Three). (R. 3, ¶ 65.) The indictment also alleges that Hu caused false statements to be made to NASA on or about February 15, 2017 (Count Four); March 9, 2017 (Count Five); and July 24, 2017 (Count Six). (R. 3, ¶ 67.)

## ARGUMENT

### I. The Charges in the Indictment Are Not Unconstitutionally Vague.

In the Motion to Dismiss, the defendant argues that NASA's China Funding Restriction is unconstitutionally vague as applied in this case, and therefore, the charges contained in the Indictment must be dismissed. (R. 36, 8.) This argument should be rejected for at least three reasons. First, the defendant is charged with wire fraud and false statements, not with violating NASA's China Funding Restriction. Second, knowledge of NASA's China Funding Restriction is not an element of any of the charged offenses. And finally, the defendant's intent is a question to be resolved by the trier of fact.

#### A. <u>Wire Fraud and False Statement Charges Are Not Vague.</u>

The Indictment charges the defendant with wire fraud in violation of 18 U.S.C. § 1343, and false statements in violation of 18 U.S.C. §§ 1001 and 2. The defendant is not charged with violating NASA's China Funding Restriction. Nevertheless, the defendant asks the court to dismiss the wire fraud and false statements charges on vagueness grounds. The defendant bears the burden of convincing this Court that such a significant ruling is warranted, and the defendant has not met that burden. *United States v. Kernel*, 667 F.3d 746 (6th Cir. 2012) ("[D]efendant

4

bears the burden of establishing that the statute is vague as applied to his particular case.") (internal citations omitted).

The defendant does not cite a single case for the conclusion that the crimes charged in this case are unconstitutionally vague. This is likely because no such precedent appears to exist. *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1107 (6th Cir. 2012) ("That the mail and wire fraud statutes are not unconstitutionally vague is beyond dispute."); *United States v. Taylor*, 232 F. Supp. 3d 741, 755 (W.D. Pa. 2017) ("As the Government points out, Defendant does not argue that any of these statutes [including wire fraud] are void for vagueness and the Court is aware of no authority supporting such a position."); *United States v. Louderman*, 576 F.2d 1383, 1388 (9th Cir. 1978) ("[T]he statute was sufficient to advise the appellants that their conduct constituted wire fraud."); *United States v. Stewart*, 872 F.2d 957, 959 (10th Cir. 1989) (wire fraud not unconstitutionally vague); *United States v. Nelson*, 712 F.3d 498, 508 (11th Cir. 2013) ("Void for vagueness ... does not mean that the [wire fraud] statute must define every factual situation that must arise.").

The defendant's reliance on *Wolfel v. Morris*, 972 F.2d 712 (6th Cir. 1992), is misplaced. In *Wolfel*, prison inmates sued prison officials for alleged civil rights violations based on discipline imposed by the prison officials against the prisoners for violating a prison regulation prohibiting the circulation of petitions. 972 F.2d at 714. The Court did not conclude that the prison regulations were vague on their face. Instead, the Court concluded that the regulations were vague as applied to the specific inmate conduct based on past practice of prison officials allowing inmates at that particular prison to circulate numerous petitions in preceding years. *Id*. at 717, 718. The basis for the Court's holding in *Wolfel*—that a particular regulation was vague

5

due to past practice allowing the same conduct—is not at issue here. And most importantly, *Wolfel* does not address any of the crimes charged in this case.

In addition, the crimes charged in this case contain specific-intent elements. *See e.g. United States v. Daniel*, 329 F.3d 480, 487 (6th Cir. 2003) ("To convict a defendant of wire fraud the government must prove specific intent."). This is important because a "specific-intent element ... renders the statute less vague." *United States v. Coss*, 677 F.3d 278, 290 (6th Cir. 2012); *see also Screws v. United States*, 325 U.S. 91, 101 (1945) ("[T]he requirement of a specific intent to do a prohibited act may avoid ... render[ing] a vague or indefinite statute invalid.").

  B. <u>Purported Ambiguity of NASA's China Funding Restriction Does Not Render the Charged Offenses Unconstitutionally Vague.</u>

In the Motion to Dismiss, the defendant appears to argue that some purported vagueness in NASA's China Funding Restriction translates into an argument that the wire fraud offenses are themselves unconstitutionally vague. This argument relies on the erroneous proposition that the government must prove that the defendant had actual knowledge of NASA's China Funding Restriction as an element of the wire fraud charges. (*See* R. 36, 7-8 "In order for Prof. Hu to commit willful fraud, he must have known and understood the 'NASA China Restriction' as defined by the Government, and then have willfully intended to devise a fraudulent scheme to get around the Restriction and get grant money from NASA.")

Wire fraud requires the government to prove three elements beyond a reasonable doubt: "(1) a scheme or artifice to defraud, (2) use of interstate wire communications in furtherance of the scheme, and (3) intent to deprive a victim of money or property." *Daniel*, 329 F.3d at 485. The government does not have to prove, as the defendant suggests, that the defendant knew and understood NASA's China Funding Restriction. NASA's China Funding Restriction establishes

6

the statutory prohibition on the use of funds appropriated to NASA to participate, collaborate, or coordinate bilaterally in any way with China or any Chinese-owned company. This law explains *why* it was that NASA and UTK insisted upon representations by the defendant. Beyond that, NASA's China Funding Restriction is useful for purposes of proving the defendant's intent to defraud but is not itself an element of the charged offenses and has no bearing on the constitutionality of the charged statutes. *See United States v. Maxwell*, 579 F.3d 1282, 1302 (11th Cir. 2009) ("First and most importantly, the specific intent required under the mail and wire fraud statutes is the intent to defraud, not the intent to violate a particular statute or regulation.").

Nevertheless, in support of his Motion to Dismiss, the defendant points to two different NASA Grant Information Circulars that explain NASA's China Funding Restriction and the manner in which NASA ensures compliance with the funding restriction: one was published in February 2012; the second, published in September 2012, amended the February 2012 edition and was in force during the time period of the criminal conduct alleged in the Indictment. The defendant argues that the changes reflected in the September 2012 version support his vagueness argument.

In February 2012, NASA published a Grant Information Circular titled, "Class Deviation Implementing NASA Restrictions on Funding Activities with the People's Republic of China (PRC)." (R. 35-1.) This document required proposers (e.g., the universities) to represent that "the proposer is not China or a China-owned company, and that the proposer will not participate, collaborate, or coordinate bilaterally with China or any Chinese-owned company...." (R. 35-1, 3.) Under the February 2012 version, NASA defined "China or Chinese-owned Company" as the PRC, any company owned by the PRC, or any company incorporated under the laws of the

7

PRC. (*Id.*) This version also set forth NASA's requirement that participation on NASA-funded projects by Chinese nationals who are not affiliated with PRC entities "will be reviewed on a case-by-case basis to determine whether restricted funds can be used under the circumstances." (*Id*. at 2.)

In September 2012, NASA published an amended version of the Grant Information Circular. (R. 35-1, 6.) This September 2012 version contains the identical requirement stated in the February 2012 version: proposers are required to represent that "the proposer is not China or a China-owned company, and that the proposer will not participate, collaborate, or coordinate bilaterally with China or any Chinese-owned company...." (*Id*. at 7.) In addition, the September 2012 version amended NASA's definition of "China or Chinese-owned Company" to add that "Chinese universities and other similar institutions are considered to be incorporated under the laws of the PRC and, therefore, the funding restrictions apply to grants and cooperative agreements that include bilateral participation, collaboration, or coordination with Chinese universities." (*Id*.) However, the September 2012 version omitted the case-by-case review regarding Chinese nationals that were not affiliated with PRC entities.

The defendant erroneously argues that the omission of the case-by case review regarding Chinese nationals that were not affiliated with PRC entities in the September 2012 Grant Information Circular is germane to his vagueness argument. First, the defendant is a Canadian national, not a Chinese national. (R. 36, 9.) Even if the defendant were a Chinese national, the omission of the case-by-case review does not affect the defendant because, as alleged in the Indictment, the defendant was affiliated with BJUT, a PRC entity. Moreover, the amended version of the Grant Information Circular was published in September 2012, more than one year prior his move to the United States, and more than three years before the criminal conduct

8

alleged in the Indictment.  If anything, the September 2012 version of the Grant Information Circular tightens the restrictions related to the defendant in that it defines "China or Chinese-owned Company" to explicitly include Chinese universities.

As a legal matter, the government need not prove that the defendant knew the purpose of—or even the existence of—NASA's China Funding Restriction.  Rather, as a legal matter, the government need only prove that the defendant made material misrepresentations or omissions with the intent to defraud.  As such, any purported ambiguity in NASA's China Funding Restriction does not warrant dismissal of the charges in the Indictment.

The government may prove specific intent in this case by introducing evidence regarding the meaning of NASA's China Funding Restriction, as well as evidence of the defendant's actual knowledge of the prohibition.  As a legal matter however, the government is not required to do so since knowledge of NASA's China Funding Restriction is not an element that the government must prove at trial.

    C. <u>The Defendant's Specific Intent Is a Question of Fact.</u>

Much of the defendant's Motion to Dismiss is devoted to arguing that the defendant did not possess the requisite intent to defraud.  Specifically, the Motion to Dismiss discusses an email exchange between the defendant and a UTK employee, wherein the UTK employee notified the defendant about NASA's China Funding Restriction and referred the defendant to a document attached to the email which set forth UTK's understanding of NASA's China Funding Restriction (hereafter, "January 2016 Email Exchange").  In so doing, the UTK employee told the defendant that, as UTK understands it, NASA's China Funding Restriction "does not apply to faculty, staff, and students."

However, the defendant fails to mention that the document attached to the email that sets forth UTK's position regarding NASA's China Funding Restriction which the UTK employee sent to the defendant in the January 2016 Email Exchange, stated that UTK's understanding is that NASA's China Funding Restriction "does not apply to the participation of students, faculty and staff from **non-Chinese entities**....." (emphasis added). The Indictment alleges that during the timeframe of the defendant's criminal conduct, the defendant was a faculty member at BJUT (a Chinese university) and that the January 2016 Email Exchange specifically advised the defendant about NASA's China Funding Restriction. (R. 3, ¶¶ 8-20, 27-28, 34.) The defendant, on the other hand, argues that the January 2016 Email Exchange "is strong exculpatory evidence of not only the confusion experienced by Prof. Hu, but strong evidence of his lack of intent to deceive." (R. 36, 13.)

"[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions of the same offense. *United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). "[A]n indictment is not required to set forth all the evidence the Government plans to present." *United States v. Palfrey*, 499 F. Supp. 2d 34, 45 (D.D.C. 2007).

In this case, the government does not anticipate relying solely on the January 2016 Email Exchange to prove the defendant's specific intent. Nevertheless, "the question of intent is generally considered to be one of fact to be resolved by the trier of facts ...." *Daniel*, 329 F.3d at 487 (quoting *United States v. Hopkins*, 357 F.2d 14, 18 (6th Cir. 1966)). Therefore, to the extent that the defendant is contending that the Court should find as a matter of law that the

10

government's evidence is insufficient to prove the defendant's specific intent, such a request is procedurally untimely and should be rejected.

## II.     An Entrapment by Estoppel Defense Is Not Grounds for Dismissal.

The defendant's Motion to Dismiss also argues that the defendant's reliance on the statements made by the UTK employee during the January 2016 Email Exchange constitutes entrapment by estoppel and therefore, the charges in the indictment must be dismissed. The defendant's Motion should be denied without prejudice.

### A.     An Indictment Does Not Need to Address Affirmative Defenses Such as Entrapment by Estoppel in Order to Be Sufficient.

Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires that an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." An indictment, however, need not address affirmative defenses. *United States v. Titterington*, 374 F.3d 453, 456 (6th Cir. 2004) ("While an indictment must satisfy these three notice-related requirements, '[i]t has never been thought that an indictment, in order to be sufficient, need anticipate affirmative defenses.'") (citing *United States v. Sisson*, 399 U.S. 267, 288 (1970)). The defense of entrapment by estoppel is an affirmative defense. *United States v. Theunick*, 651 F.3d 578, 589 (6th Cir. 2011) ("Entrapment by estoppel is an affirmative defense that is rarely available." (internal citations omitted)). Since entrapment by estoppel is an affirmative defense, the indictment need not address it and the defendant's Motion to Dismiss should be denied.

If the defendant wishes to raise a defense of entrapment by estoppel in this case, he must first provide such notice to the court and to the government pursuant to Rule 12.3(a) of the Federal Rules of Criminal Procedure. *Theunick*, 651 F.3d at 590 ("Fed.R.Crim.P. 12.3(a) requires the defendant who intends to request the public authority defense to notify the court and

11

government in advance."). Once this notice has been provided, the government and the defendant can then litigate whether there is a sufficient evidentiary basis to permit evidence of this defense to be presented at trial or, once such evidence has been presented at trial, whether the evidence is sufficient to warrant a jury instruction on the entrapment by estoppel defense.

      B.    <u>Dismissal of an Indictment Is Improper Where There Is a Factual Dispute Regarding the Defendant's Intent to Defraud.</u>

Regardless of whether the defendant is ultimately permitted to offer evidence at trial regarding an entrapment by estoppel defense and whether the court instructs the jury accordingly, a motion to dismiss is not the proper procedural mechanism to rule on the merits of the defense. Where, as here, there are disputes among the parties about facts involving an element of the charged offenses (the defendant's specific intent to defraud), dismissal of an indictment on a motion to dismiss under Rule 12 of the Federal Rules of Criminal Procedure is not appropriate. The Sixth Circuit's holding and rationale in *United States v. Levin*, 973 F.2d 463 (6th Cir. 1992), a case the defendant relies on, make this clear.

In *Levin*, the defendants were charged with health care fraud and other related offenses. In support of their motion to dismiss, the *Levin* defendants offered letters from the U.S. Department of Health and Human Services stating that the conduct underlying the federal charges did not violate the relevant regulations. During a hearing on the motion to dismiss, the government conceded that there was not a factual dispute, and the district court ultimately granted the motion to dismiss. *Id*. at 466. The court of appeals affirmed the dismissal of criminal charges by the district court because "undisputed extrinsic evidence" demonstrated that "the government was, as a matter of law, incapable of proving" an element of the charged offense. *Id*. at 469.

12

Were the defendant to attempt to assert an entrapment by estoppel defense at trial in this case, the government would likely oppose for at least two reasons. In order to establish an entrapment by estoppel defense, the defendant must show that (1) the government announced that the charged criminal act was legal, (2) the defendant relied on that announcement, (3) the reliance was reasonable, and (4) the prosecution would be unfair given the defendant's reliance. *United States v. Lechner*, 806 F.3d 869, 875 (6th Cir. 2015).

First, the UTK employee involved in the January 2016 Email Exchange did not announce that the charged criminal acts were legal and, in any event, was not authorized to do so. The UTK employee stated, "However, UTK always includes a special copy stating that, as we understand it, [NASA's China Funding Restriction] does not apply to faculty, staff, and students. Attached is the unsigned version of the document I refer to." (R. 35-6, 3.) The document attached to the email states, in part, that NASA's China Funding Restriction "does not apply to the participation of students, faculty and staff from **non-Chinese entities**....." (emphasis added). (*Id*. at 6.) As alleged in the Indictment, the defendant was a faculty member of BJUT, a Chinese entity. (R. 3, ¶¶ 8-20.) In addition, assuming the UTK employee was an employee of the State of Tennessee, the UTK employee was not an authorized government official for purposes of an entrapment by estoppel defense. *See United States v. Ormsby*, 252 F.3d 844, 851 (6th Cir. 2001) ("When [an entrapment by estoppel] defense is asserted with respect to a federal offense, representations by state or local officials lack the authority to bind the federal government to an erroneous interpretation of federal law.").

Second, the defendant's reliance on the statement by the UTK employee was unreasonable. As alleged in the Indictment, the defendant engaged in a scheme to defraud NASA by falsely representing and concealing his affiliation with BJUT to UTK. (R. 3, ¶ 21.)

13

Assuming that the defendant did not disclose fully his BJUT employment to the UTK employee, the defendant cannot reasonably rely on a statement made by the UTK employee that NASA's China Funding Restriction does not apply the defendant. Where, as here, the defendant's material misrepresentations and omissions go to the heart of the validity of the statement that he now wishes to rely on, such reliance is unreasonable.

The defendant does not point to any official announcement by NASA that the charged conduct was legal and the government disputes the factual basis for the defendant's assertion of an entrapment by estoppel defense. At its core, the defendant's estoppel argument is nothing more than an argument that the government lacks sufficient evidence proving the defendant's criminal intent. The Indictment alleges that the defendant acted with the requisite criminal intent for the wire fraud and false statements charges, but does not—and is not required to—set forth all of the government's evidence on this point. Unlike in *Levin*, the defendant has not provided the court with any information that could lead to the conclusion that the government is "as a matter of law, incapable of proving" the defendant's specific intent to commit the charged offenses.

For these reasons, the defendant's Motion to Dismiss the Indictment on the basis of entrapment by estoppel should denied without prejudice.

## CONCLUSION

The defendant's Motion to Dismiss Because Void from Vagueness and to Dismiss under Fed. Rule Crim. Pro. 12(b) Based on Entrapment by Estoppel should be denied.

Respectfully submitted on July 20, 2020.

                                    J. DOUGLAS OVERBEY
                                    UNITED STATES ATTORNEY

By:   *s/ Casey T. Arrowood*
       Casey T. Arrowood
       Assistant United States Attorney
       TN BPR# 038225
       800 Market Street, Suite 211
       Knoxville, TN 37902
       (865) 545-4167
       Casey.Arrowood2@usdoj.gov