| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>　　　　　　　　　　　　　　　　)<br>　　　　　　　Plaintiff,　　　　)<br>　　　　　　　　　　　　　　　　)<br>v.　　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　)　　No.  3:20-CR-021-TAV-DCP<br>ANMING HU,　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　)<br>　　　　　　　Defendant.　　　　) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate.  This case came before the Court on July 30, 2020, for a motion hearing on Defendant Hu's Motion to Dismiss Because Void From Vagueness and to Dismiss Under Fed. Rule Crim. Pro. 12(b) Based on Entrapment by Estoppel and Request for a Hearing [Doc. 34], filed on June 26, 2020.  Assistant United States Attorneys Casey Arrowood and Frank Dale, Jr., appeared on behalf of the Government.  Attorney Philip Lomonaco represented Defendant Hu, who was also in attendance.  The Court heard argument on the motion as well as other pending motions and took the issues under advisement.[1]

At the hearing, Defendant withdrew the entrapment by estoppel argument, agreeing that it could not be decided pretrial.  For the reasons discussed herein, the undersigned finds Defendant's

---

[1] The Court also heard argument on Defendant Hu's Motion to Unseal Documents [Doc. 38], Motion for the Government to Provide Translation [Doc. 39], and Motion to Direct the Government to Produce any Rule 404(B) Type Evidence of Other Crimes or Bad Acts by the Defendant [Doc. 40], all of which have been addressed in a previously filed Memorandum and Order [Doc. 50], entered on August 18, 2020.

motion to dismiss the charges based upon an unconstitutional vagueness argument is not well taken. Accordingly, the Court **RECOMMENDS** that the Defendant's motion be **DENIED**.

## I. POSITIONS OF THE PARTIES

On February 25, 2020, Defendant was charged in a six-count Indictment [Doc. 3] with three counts of wire fraud, in violation of 18 U.S.C. § 1343, and three counts of making false statements in a matter within the jurisdiction of the executive branch of the United States, in violation of 18 U.S.C. §§ 1001 and 1002. The Indictment alleges that Defendant, who was employed as an Associate Professor in the Department of Mechanical, Aerospace and Biomedical Engineering at the University of Tennessee, Knoxville ("UTK"), performed research under grants funded by U.S. government agencies, including the National Aeronautics and Space Administration ("NASA"), and engaged in a scheme to defraud NASA by falsely representing and concealing from UTK his affiliation with Beijing University of Technology, a Chinese university. [*Id.* at ¶4 and ¶21]. The Indictment details that under NASA's China Funding Restriction ("the NCFR"), "NASA was prohibited from using appropriated funding to enter into or fund any grant or cooperative agreement of any kind to participate, collaborate, or coordinate bilaterally in any way with China or any Chinese-owned company," including Chinese universities, which are considered to be incorporated under the laws of the People's Republic of China ("PRC"). [*Id.* at ¶2-¶3]. The Indictment states that Defendant's false representation and concealment of his affiliation with BJUT to UTK caused UTK to falsely certify to NASA that it was in compliance with the NCFR. [*Id.* at ¶21].

Defendant asserts that the NCFR is "an essential element to committing the charged offenses" [Doc. 47 at 7] and "accompanies" the fraud statute. As such, he argues that "wire fraud can be struck down because another accompanying law is declared void for vagueness." [*Id.*].

2

Defendant maintains that an ordinary person could not understand what is prohibited by the NCFR and that vagueness of the NCFR encourages arbitrary or discriminatory enforcement.

The Government responds that Defendant's void for vagueness argument fails because he is not charged with violating the NCFR, and therefore, his knowledge of the NCFR is not an element of the charged offenses that the Government must prove at trial. The Government argues that Defendant's motion is, in effect, a challenge to the sufficiency of the Government's evidence on the element of Defendant's criminal intent, which is an issue for the trier of fact.

## II. BACKGROUND[2]

The NCFR was implemented through passage of the Department of Defense and Full-Year Appropriations Act of 2011, Public Law 112-10 and the Consolidated and Further Continuing Appropriations Act of 2012, Public Law 112-55 (collectively "the Acts"). Under the Acts, NASA was restricted from funding activities with the PRC. Specifically, NASA was prohibited from using funding appropriated in the Acts "to enter into or fund any grant or cooperative agreement of any kind to participate, collaborate, or coordinate bilaterally in any way with China or any Chinese-owned company." NASA defined this provision of the Acts, which prohibits grants or agreements with China or Chinese-owned companies, to include Chinese universities.

At all times relevant to the allegations in the Indictment, Defendant was an Associate Professor at UTK. He joined the UTK faculty in November 2013. As a UTK faculty member, Defendant performed research under grants funded by U.S. government agencies, including NASA. Beginning in 2013 and continuing through the date of the Indictment, Defendant was also

---

[2] Unless otherwise noted, the facts summarized in this section are taken from the Indictment.

a faculty member at BJUT[3]. The Indictment alleges that beginning in 2016, Defendant engaged in a scheme to defraud NASA by falsely representing and concealing his affiliation with BJUT to UTK, and through these representations and omissions, Defendant knowingly and willfully caused UTK to falsely certify that it was in compliance with the NCFR.

### 1. The Alleged Scheme to Defraud NASA

The Indictment states that beginning in 2016, Defendant engaged in a scheme to defraud NASA by falsely representing and concealing his affiliation with BJUT to UTK. As part of the scheme, Defendant worked as a professor at BJUT and worked on projects sponsored by the Chinese government, while at the same time working as a UTK professor. It is alleged that Defendant falsely represented that he was not an employee of any organization except for UTK. The Indictment charges that Defendant, through his fraudulent representations and omissions to UTK about his BJUT affiliation, knowingly and willfully caused UTK to falsely certify to NASA that UTK was in compliance with the NCFR, and as a result, Defendant was awarded NASA-funded projects he would not otherwise have received if he had fully disclosed to UTK his BJUT affiliation.

### 2. Defendant's Alleged False Representations/Concealments of BJUT Affiliation

The Indictment details that in January 2016, Defendant was made aware of the NCFR when he was preparing a proposal for submission to the Jet Propulsion Laboratory ("JPL") at the California Institute of Technology to work on a NASA-funded project. As part of his proposal, Defendant secured a letter of commitment from a professor at the National Synchrotron Radiation Laboratory in Hefei, China, to collaborate on the project, and he sent the letter to a JPL employee,

---

[3] In 2012, Defendant had entered into an agreement to teach part-time (two months a year) for Beijing University of Technology ("BJUT") from January 1, 2012, through December 31, 2017. [Doc. 36, Exh. 3].

4

copying two UTK employees. In an email exchange on January 12, 2016, a UTK employee suggested revisions to the proposal and noted "Regarding the China Assurance, NASA requires you to include a signed document stating you assure you will comply with the Chinese Funding Restrictions." In the email formally transmitting the proposal to JPL, with a copy to Defendant, the UTK employee sets out the required assurance language from the NCFR and states that UTK cannot agree with the letter of commitment arrangement with the National Synchrotron Radiation Laboratory professor and still maintain assurance with NCFR and requests that the commitment letter not be submitted with the main application to NASA.

The Indictment goes on to state that from 2016 to 2019, Defendant completed and submitted Outside Interests Disclosure Forms to UTK, answering "No" to the question, "Are you an officer, director, board member, trustee, or employee of any organization or business entity (for-profit or non-profit) other than [UTK]?" Further, in 2018, when Defendant applied for a tenured faculty position with UTK, he submitted a curriculum vitae omitting any affiliation with BJUT. Finally, the Indictment details that in December 2019, as another proposal for a NASA-funded project was being prepared, a UTK employee sent Defendant an email addressing the "NASA Assurance Form," stating that as part of the proposal process, NASA requires UTK to provide a Chinese Assurance letter. A document labeled "ChineseAssurance.docx" was attached to the email, and the email stated in part, "Part of the process of submitting proposals to NASA is that we (UTK) have to provide a Chinese Assurance letter. Our authorized Organizational representative, [UTK employee], signs these document [*sic*] on behalf of UT stating that we do not plan to collaborate, coordinate, or participate with China or any Chinese-owned company on our projects. … Please read over the letter and let me know if you confirm/not confirm."

5

Defendant responded to the email by stating, "i have read through this letter and confirm that I will fully obey the policy."

The Indictment charges Defendant with three specific instances of wire fraud occurring on or about October 20, 2016 (Count One); November 12, 2018 (Count Two); and August 30, 2019 (Count Three). In addition, Defendant is charged with causing false statements concerning UTK's compliance with the NCFR to be made to NASA via UTK's submission of invoices for Defendant's work on or about February 15, 2017 (Count Four); March 9, 2017 (Count Five); and July 24, 2017 (Count Six).

### III. ANALYSIS

Central to Defendant's Motion to Dismiss is the NCFR, which as explained above, prohibits NASA from "using appropriated funding to enter into or fund any grant or cooperative agreement of any kind to participate, collaborate, or coordinate bilaterally in any way with China or any Chinese-owned company," including Chinese universities. While Defendant is not charged with violating the NCFR, Defendant maintains that in order to commit willful fraud, "he must have known and understood the '[NCFR]' as defined by the Government, and then have willfully intended to devise a fraudulent scheme to get around the Restriction and get money from NASA." [Doc. 36 at 7-8]. Defendant argues that the NCFR is so vague and confusing that he could not have understood that "mere affiliation with a Chinese University would prohibit a U.T. professor from assisting U.T. in applying for a NASA grant." [*Id.* at 15].

The Government counters that it need not prove that Defendant understood the NCFR because his knowledge of the NCFR is not an element that must be proven at trial. The Government asserts that it must only prove the Defendant made material misrepresentations or omissions with the intent to defraud, but that it may "prove specific intent in this case by

6

introducing evidence regarding the meaning of the [NCFR], as well as evidence of [Defendant's] actual knowledge of the prohibition." [Doc. 41 at 9].

Thus, at issue is the role of the NCFR, in the context of the sufficiency of the Indictment. Defendant correctly points out that there does not appear to be any case law "defining or exploring the parameters of the [NCFR]" [Doc. 36 at 8]. However, for the reasons more fully explained below, the Court finds that an analysis of any interplay between the NCFR and the wire fraud statute is not necessary at this juncture as the NCFR has no bearing on the question of the Indictment's sufficiency.

As an initial matter, the Court examines the offenses as charged in the Indictment. To prove wire fraud pursuant to 18 U.S.C. § 1343, the government must prove (1) a scheme to defraud; (2) the use of, or causing the use of, an interstate wire communication in furtherance of the scheme; and (3) intent "to deprive a victim of money or property." *United States v. Faulkenberry,* 614 F.3d 573, 581 (6th Cir. 2010). The elements of a false statements charge under 18 U.S.C. § 1001 consists of the following: (1) a statement that was (2) false or fraudulent, (3) material, (4) made knowingly and willfully, and (5) "pertained to an activity within the jurisdiction of a federal agency." *United States v. Siemaszko*, 612 F.3d 450, 462 (6th Cir. 2010) (citation omitted). Rule 7(c)(1) requires an indictment to include "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "'[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Hudson*, 491 F.3d 590, 592–93 (6th Cir.) (quoting *Hamling v. United States,* 418 U.S. 87, 117 (1974)), *cert. denied, 552 U.S. 1081 (2007)*; *see also United States v. Vanover,* 888 F.2d 1117, 1120 (6th Cir. 1989),

7

*cert. denied*, 495 U.S. 934 (1990). The Court observes that it must use " 'a common sense construction' " to determine whether the indictment gives the Defendant fair notice of the charges. *United States v. Maney,* 226 F.3d 660, 663 (6th Cir. 2000) (quoting *Allen v. United States,* 867 F.2d 969, 971 (6th Cir. 1989)).

Counts 1 through 3 allege that Defendant engaged in a scheme to defraud NASA, and "to obtain money and property by means of materially false and fraudulent pretenses, representations, promises, and half-truths, and concealment of material facts with a duty to disclose." The Indictment then supplies details―dates and descriptions of wire communications―about the criminal allegations. Counts 4 through 6 allege that Defendant caused false statements in UTK invoice certifications to be made to NASA because Defendant knew that he was affiliated with BJUT. The Indictment details the dates and descriptions of each alleged false statement.

Defendant does not argue that the wire fraud or false statement statutes are void for vagueness, and in fact, concedes that the "fraud statute itself is rarely deemed vague." [Doc. 47 at 4]. Courts that have addressed challenges to the wire fraud statute have deemed the statute not unconstitutionally vague. *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1107 (6th Cir. 2012) (holding "[t]hat the mail and wire fraud statutes are not unconstitutionally vague is beyond dispute"); *see also United States v. Taylor*, 232 F. Supp. 3d 741, 755 (W.D. Pa. 2017) (observing no authority supports a finding that the wire fraud statute is void for vagueness); *United States v. Stewart*, 872 F.2d 957, 959 (10th Cir. 1989) (holding wire fraud statute not unconstitutionally vague); *United Sates v. Louderman*, 576 F.2d 1383, 1388 (9th Cir.) (rejecting vagueness challenge and finding "the [wire fraud] statute was sufficient to advise the appellants that their conduct constituted wire fraud"), *cert. denied,* 439 U.S. 896 (1978). Similarly, 18 U.S.C. § 1001, prohibiting making a false statement to a federal agency, has been found not void for vagueness. *United States v. Gibson,* 409 F.3d 325, 334 (6th Cir. 2005).

8

While Defendant does not argue vagueness as to the wire fraud statute, he persists that the fraud charges must be dismissed because "the [NCFR] law is too vague to render itself to a reasonable interpretation." [Doc. 47 at 4]. Defendant contends that "wire fraud can be struck down because another accompanying law is declared void for vagueness." [*Id.*]. Defendant maintains that the NCFR accompanies the fraud statute and argues that "[t]he [NCFR], *and therefore the fraud allegations* are unconstitutionally vague as applied to [Defendant.]" [*Id.*]. In support of his position, Defendant relies on *Wolfel v. Morris*, 972 F.2d 712, 717 (6th Cir. 1992), and *United States v. Saathoff,* 708 F. Supp. 2d 1020, 1035-37 (S.D. Cal. 2010).

While Defendant offers a number of persuasive arguments as to why he may not have understood the NCFR, the basis for his motion to dismiss on vagueness grounds lacks merit on a fundamental level. Defendant cites no case applying the void-for-vagueness doctrine to a provision of an appropriation law delineating the restrictions on funding by a government agency. As the Sixth Circuit has observed:

> [T]he Supreme Court has made it clear that the vagueness doctrine has two primary goals. First, to ensure fair notice to the citizenry; second, to provide standards for enforcement by the police, judges, and juries. The requirement that the government write statutes that provide fair notice to those who must obey them is a traditional basis of the vagueness doctrine.

*Columbia Nat. Res.*, 58 F.3d at 1104–05. The void-for-vagueness doctrine is principally employed in the interpretation and application of criminal statutes, and generally requires that "'a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" *Risbridger v. Connelly*, 275 F.3d 565, 572 (6th Cir. 2002) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)); *see United States v. Coss*, 677 F.3d 278, 289 (6th Cir. 2012). Apart from First Amendment issues, a party "'has standing to raise a vagueness challenge only

insofar as the statute is vague as applied to his or her specific conduct.'" *Columbia Nat. Res.*, 58 F.3d at 1109 n.6 (quoting *United States v. Pungitore,* 910 F.2d 1084 1103 (3rd Cir. 1990)); *see New York v. Ferber,* 458 U.S. 747, 767–69 (1982). Here, we are dealing with a provision of the NCFA that imposes neither criminal liability, nor civil penalty, upon Defendant's conduct. Accordingly, the void-for-vagueness doctrine does not apply. *Courser v. Michigan House of Representatives*, 404 F. Supp. 3d 1125, 1141 n.6 (W.D. Mich. 2019) (observing that "no case has apparently ever applied the void-for-vagueness doctrine to a provision of a state constitution delineating the powers of a branch of government"); *see Does v. Mills*, No. 04 Civ. 2019(RWS), 2005 WL 900620, at *10 (S.D.N.Y. Apr. 18, 2005) ("The regulations here are not criminal laws. They do not proscribe conduct protected by the First Amendment. Nor do they impose civil sanctions for certain types of conduct. Therefore, the void-for-vagueness doctrine is not applicable.").

Defendant's reliance on *Wolfel* is inapposite. The proposition for which Defendant cites *Wolfel*—that regulations can be properly analyzed under the void-for-vagueness analysis—is misplaced given that the NCFR, which is an appropriation law, does not regulate Defendant's conduct. In *Wolfel*, inmates brought a civil rights action against prison officials after having been disciplined for circulating a petition in violation of prison regulations. 972 F.2d at 714. While not concluding that the regulations were vague on their face, the court found the regulations vague as applied to the specific inmate conduct, given the prison officials' past conduct in allowing circulation of petitions. *Id.* at 717. The court reasoned that the inmates had no reason to believe that they were engaging in prohibited activity as they had been allowed to circulate numerous petitions over the years, while the relevant rules were in force. *Id.* The prison *regulations* at issue in *Wolfel* specifically governed the inmates' conduct and subjected them to punishment, consistent

10

with standing principles for the void-for-vagueness doctrine. *See id.* In contrast, in the present case, the regulation at issue, the NCFR, is a funding regulation governing NASA appropriations, not the conduct of the individuals or entities seeking the appropriations from NASA. Because the NCFR is a funding regulation that restricts NASA appropriations and not a penal law that imposes criminal liability on Defendant, the void-for-vagueness doctrine does not apply.

While Defendant argues that the NCFR is an essential element to the charges in the Indictment, as it is "the lynchpin to any argument that [Defendant broke] the law" [Doc. 47 at 7], the instant Indictment does not allege or even presuppose that Defendant violated the NCFR as part of the charged wire fraud scheme. Rather, Defendant is charged with concealing his affiliation with BJUT from UTK, thereby causing UTK to make false representations to a government agency. For example, the Indictment alleges that Defendant falsely represented to UTK that he was not an employee of any organization except for UTK and omitted his affiliation with BJUT from his curriculum vitae, when he applied for tenure at UTK in 2018. [Doc. 3, ¶23]. While the Indictment goes on to state that after being advised of the NCFR in 2016, Defendant continued to conceal his BJUT affiliation and willfully caused UTK to certify to NASA that it was in compliance with the NCFR, it does not charge Defendant with violating the NCFR. Indeed, the NCFR may be a central point in the overall context of the case, but the Defendant's criminal liability does not rest on the Government proving that Defendant violated the NCFR.

To simplify the charges somewhat, the question in this case is whether Defendant knowingly devised a scheme and made false statements intending to induce NASA to make project payments that it otherwise would not have made to UTK. As the Government has acknowledged, it may attempt to prove intent by introducing evidence regarding the meaning and Defendant's knowledge of the NCFR, but Defendant's assertion that the NCFR is vague will go to the

11

sufficiency of the evidence against him. *See United States v. Larm,* 824 F.2d 780, 784 (9th Cir. 1987) (finding that where doctor and his wife were prosecuted under federal statute forbidding false statements, rather than under billing codes, any attack as to vagueness of billing codes, which formed the factual backdrop that made the statements false, is ultimately an attack on the sufficiency of the evidence), *cert. denied*, 484 U.S. 1078 (1988). The sufficiency of the charges and the sufficiency of the proof are two different things. *See United States v. Calandra*, 414 U.S. 338, 345 (1974) (holding that "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence"). A motion to dismiss the indictment is not a vehicle by which to test the sufficiency of the government's evidence. *United States v. Short*, 671 F.2d 178, 183 (6th Cir.) (observing that "the prosecution's evidence is tested at trial, not in a preliminary proceeding") *cert. denied* 457 U.S. 1119 (1982); *see also United States v. Levin*, 973 F.2d 463, 468 n.2 (6th Cir. 1992) (affirming *Short* and holding the defendant may challenge the indictment for failure to state an offense only when the issue raised is a question of law and the relevant facts are undisputed).

Defendant urges the Court to address his challenge to the NCFR now, so that he will not have to face the hardships attendant to indictment and trial. However, the Grand Jury has found probable cause to bring the instant charges. Entertaining Defendant's arguments on the sufficiency of the evidence pretrial would tread upon the role of the Grand Jury:

> Not only would such proceedings be wasteful of judicial resources; they would be contrary to the underlying assumptions of the constitutional requirement that serious criminal charges be based on a grand jury presentment or indictment. One assumption is that a grand jury will be concerned with the rights of those who may be charged with crimes as well as with determining what offenses have been committed. When a body of citizens, properly chosen and constituted as a grand jury, finds probable cause to believe that a crime has been committed within its jurisdiction, that finding is sufficient to require a trial.

12

*Short*, 671 F.2d at 183. Defendant is still entitled to challenge the Government's proof. "However, the prosecution's evidence is tested at trial, not in a preliminary proceeding." *Id.*

Because Defendant does not assert that either of the statutes under which he has been charged are vague, he has not stated a valid vagueness challenge under the Due Process clause.

## IV. CONCLUSION

For the reasons set forth above, the Court finds Defendant has failed to raise a valid constitutional challenge to the Indictment. The Court also finds Defendant has withdrawn his pretrial challenge based on an entrapment defense. Accordingly, the undersigned respectfully **RECOMMENDS** that Defendant Hu's Motion to Dismiss Because Void From Vagueness and to Dismiss Under Fed. Rule Crim. Pro. 12(b) Based on Entrapment by Estoppel and Request for a Hearing [Doc. 34] be denied.[4]

**IT IS SO ORDERED.**

ENTER:

Debra C. Poplin
United States Magistrate Judge

---

[4] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).