<pre>
 1            IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF TENNESSEE
 2                   AT KNOXVILLE, TENNESSEE
   _____
 3                                 )
   UNITED STATES OF AMERICA,       )
 4                                 )
             Government,           )
 5                                 )
   vs.                             ) Case No. 3:20-cr-21
 6                                 )
   ANMING HU,                      )
 7                                 )
             Defendant.            )
 8 _____)

 9                     **TRIAL PROCEEDINGS**
              **BEFORE THE HONORABLE THOMAS A. VARLAN**
10
                        **June 16, 2021**
11                      **Volume VII of VII**

12 **APPEARANCES**:

13          **ON BEHALF OF THE GOVERNMENT**:

14          CASEY ARROWOOD, ESQ.
            U.S. DEPARTMENT OF JUSTICE
15          OFFICE OF U.S. ATTORNEY
            800 Market Street
16          Suite 211
            Knoxville, TN 37902
17
            MATTHEW J. MC KENZIE, ESQ.
18          U.S. DEPARTMENT OF JUSTICE
            NATIONAL SECURITY DIVISION
19          950 Pennsylvania Avenue, NW
            Washington, DC 20530
20

21

22
   **REPORTED BY**:
23
   Teresa S. Grandchamp, RMR, CRR
24 P.O. Box 1362
   Knoxville, Tennessee 37901
25 (865) 244-0454
</pre>

1    **APPEARANCES:** (Continued)

2              ON BEHALF OF THE DEFENDANT:

3         A. PHILLIP LOMONACO, ESQ.
          LAW OFFICES OF A. PHILLIP LOMONACO
4         800 South Gay Street, Suite 1950
          Knoxville, TN 37929
5
                    * * * * * * * *
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURTROOM DEPUTY:  All rise.  This

2    honorable court is again in session.  Please come to

3    order and be seated.

4          THE COURT:  All right.  Thank you.  Good

5    afternoon, everyone.  The parties have been informed

6    that the jury, through its foreperson, has submitted a

7    question.  All counsel has copies, but I'll read it into

8    the record, quote -- and hopefully I'll get this

9    correct.  It's little bit hard to read in parts, but,

01:36PM 10    quote, "After spending hours searching supplied

11    evidence, we, the jury, are unable to find the completed

12    NASA proposal and contract agreement period" -- spelled

13    out p-e-r-i-o-d -- "(10.11.16 - 10.31.17)," close paren,

14    "JPL Contract No. 1560728.  Was that document submitted

15    into evidence?  And if so, what document, evidence

16    numbers?"

17          I don't know if you all have talked about it

18    together or --

19          MR. LOMONACO:  I think we're pretty much in

01:37PM 20    agreement.

21          THE COURT:  Any suggestions on how to answer

22    it?

23          MR. LOMONACO:  Well, we believe that the

24    proposal -- there is about three documents that go with

25    the proposal.

1          Go ahead.

2          MR. ARROWOOD:  Your Honor --

3          THE COURT:  Go ahead up to the lectern so we

4    all can hear you.

5          MR. ARROWOOD:  So with respect to the proposal,

6    there was an email that transmitted the proposal --

7    that's 8-I -- and in that email, there are three

8    attachments.  Those three attachments make up the

9    proposal.  Unfortunately none of those three attachments

01:37PM 10   are labeled proposal.  So 8-J is the letter of

11   commitment, 8-K is the project narrative, and 8-L is the

12   budget justification.  And so that would make up the

13   proposal.

14         MR. LOMONACO:  We agree with that, Your Honor.

15         THE COURT:  Okay.  So what should my answer be?

16   Do you all agree on what the answer should be to the

17   jury?  Usually on something like this, I'll just write

18   the answer.  Should I say, "See" -- what's the email

19   number again; 8 what?

01:38PM 20         MR. ARROWOOD:  Your Honor, the proposal can be

21   found -- well, the email submitting the proposal is 8-I,

22   and then the attachments to that email constitute the

23   proposal, and there are three of those, 8-J, 8-K, and

24   8-L.

25         THE COURT:  Do you agree with that,

1   Mr. Lomonaco?

2           MR. LOMONACO:  Yes, Your Honor.

3           THE COURT:  So do we want the answer to be the

4   email submitting the proposal is 8-I.  The attachments

5   to the email constitute the proposal - 8-J, 8-K, 8-L?

6   Is that a --

7           MR. ARROWOOD:  For the proposal portion of the

8   question.

9           THE COURT:  Let's make sure we're in agreement

01:39PM 10  exactly how we're going to answer this.  This is what

11  I'm hearing.  This is what I'm suggesting:  "The email

12  submitting the proposal is Government's Exhibit 8-I.

13  The attachments to the email constitute the proposal -

14  Government's Exhibit 8-J, 8-K, 8-L."

15          Is that acceptable to the government?

16          MR. ARROWOOD:  Yes, Your Honor.

17          THE COURT:  Is that acceptable to the

18  defendant?

19          MR. LOMONACO:  Yes, Your Honor.

01:39PM 20          THE COURT:  Okay.  So that's it then.

21          MR. ARROWOOD:  Wait a minute.  The contract is

22  a different number.  The question asked for a proposal

23  and a contract.

24          THE COURT:  So we're not done.

25          MR. ARROWOOD:  So here, Your Honor, I'm not

1   quite sure exactly how we should respond, but the

2   contract -- essentially there are two different

3   contracts, Government's Exhibit 8-M, as in Michael, is

4   the email submitting a partially-signed contract.  The

5   attachment to 8-M is 8-N, as in November.  That is the

6   partially-signed contract.  That version was signed

7   solely by Jean Mercer.  However, the fully-executed

8   contract with both parties having signed it is

9   Government's Exhibit 6-B.

01:40PM   10          THE COURT:  6-B, as in boy?

11          MR. ARROWOOD:  Yes, Your Honor.  And that

12   subcontract, either one of them, 6-B or 8-N, at the top

13   of the contract indicates that there are additional

14   terms and conditions.  They're called general

15   provisions.  The government also entered those general

16   provisions associated with that subcontract as a

17   separate exhibit.  So, in other words, the terms and

18   conditions of that subcontract are at Government's

19   Exhibit 8-AA.

01:40PM   20          THE COURT:  Mr. Lomonaco.

21          MR. LOMONACO:  I think that's right, Your

22   Honor.  They submitted a signed contract on behalf of

23   UT, and then NASA signed it, and then they introduced

24   that document, also.

25          THE COURT:  Well --

1       MR. LOMONACO:  And it refers to terms and

2   conditions that are part of the contract, and that's the

3   government's last number they gave you.

4       THE COURT:  All right.  Why don't we do this:

5   Let me take a break, and you all -- why don't you all

6   see if you can write out something acceptable to both

7   parties in a response that encapsulates what you talked

8   about.  How about that?

9       MR. LOMONACO:  That's fine, Your Honor.

01:41PM 10      THE COURT:  Take about five minutes and let you

11  all try your hand at that.

12      We'll stand in recess.

13      THE COURTROOM DEPUTY:  This honorable court

14  should stand in recess.

15      (A brief recess was taken.)

16      THE COURTROOM DEPUTY:  All rise.

17      THE COURT:  I appreciate the parties' efforts.

18  I guess here is what I'm still struggling with or what

19  the Court is still struggling with.  You can sit

01:51PM 20  down.  When we answer jury questions, we try to be very

21  careful not to offer testimony, and when I read this --

22  and I've had these thoughts when we were talking

23  earlier, but these three attachments constitute the

24  proposal.  Is that invading the province of the jury to

25  make that determination?

1    I mean, you know, in order to consider

2    testimony in connection with these documents, you know,

3    the fully-executed subcontract is this; the terms and

4    conditions are located here.  I mean, I'm just --

5         MR. LOMONACO:  Those are facts, aren't they,

6    asserting facts?

7         THE COURT:  Yeah.  I don't know.  I mean, part

8    of the defendant seems to agree with this, but I'm more

9    inclined, as I read through this, and with that thought

01:52PM   10    in mind that, you know, maybe just list -- the following

11    documents may be relevant to your question, or something

12    like that, and just list them, and then the jury goes

13    back and looks at the documents and determines if,

14    quote, "they constitute the proposal," or, quote, you

15    know, "are located" -- "the terms and conditions,"

16    etcetera, etcetera.

17         How do the parties feel about that?

18         MR. ARROWOOD:  Your Honor, I don't object.

19         THE COURT:  The first question, I thought, you

01:53PM   20    know, jury, it's up to you to look at the exhibits and

21    determine.  But if the parties can agree at least on

22    what exhibits to recommend to them -- I cut you off,

23    Mr. Arrowood.  What were you going to say in response to

24    the Court?

25         MR. ARROWOOD:  Your Honor, I was just going to

say:  We put that language in there to try to orient

them from proposal to contract.  But certainly if the

Court wants to give the exhibit numbers and we think

this may be responsive, the government has no objection

to that.

THE COURT:  Is that alright with you,

Mr. Lomonaco?

MR. LOMONACO:  Your Honor, now that you

mentioned it, it does -- our answer does sort of set

01:53PM  things in stone, as far as whether it's really a

contract and a proposal and so on.

I mean, the exhibits were entered.  They were

introduced as to what they are.  Maybe just refer to --

you may refer to exhibits such and such and such and

such and make your own independent determination whether

this answers your question or not or whether it's a --

a -- you know, responsive or whether -- it's not for the

Court to designate them one way or the other.  That's

just my suggestion, Your Honor.

01:54PM  I sort of like the idea that the evidence is

closed.  You've got what you got.  We're sorry if it

takes a little bit longer.  If you want to look at it,

you know, you need to analyze the evidence that's been

introduced to reach a decision in this case and it's not

for the Court to direct your attention to any particular

document or suggest any particular outcome.

THE COURT: Well, there is some merit in that approach. I mean, the jury has the evidence. They may -- look through it all you want and make your own determination. I wouldn't say it quite that way.

What does the government think about that response?

MR. ARROWOOD: Just so I understand, it's not to really respond in any substantive way whatsoever to the question.

THE COURT: Yeah, I don't know that I've ever had this type of question, you know. You know, factually is this -- direct us to documents. There is some concern on the Court's part in that regard.

MR. LOMONACO: I know I've had many cases where the Court has gone back to the jury and said, "You've got what you've got." You know, "You need to reach a decision based on the law that I gave you and the evidence that's been submitted."

THE COURT: I didn't bring down the jury charge, but we -- it's up to the jury to determine what the facts are is what we tell them.

MR. LOMONACO: That's true.

THE COURT: I could repeat the jury charge.

MR. LOMONACO: Your Honor, I would withdraw my

1  previous agreement to the --

2          THE COURT:  Okay.

3          MR. ARROWOOD:  Your Honor, one of the questions

4  was:  Was that document submitted into evidence?  I

5  think the answer to that question is, yes, it was.  Even

6  if you don't want to direct the Court -- or the jury to

7  which document it is, the JPL subcontract was, in fact,

8  admitted into evidence, Your Honor.

9          MR. LOMONACO:  Maybe it would be better to be

01:56PM 10 completely neutral now that --

11         THE COURT:  Well, what about that?  The

12  government is saying the direct answer is -- I guess

13  they're saying the JPL subcontract No. 1560728 is

14  Exhibit 6-B.  Is that what you're saying, Mr. Arrowood?

15         MR. ARROWOOD:  It is in part 6-B.  Now we're

16  going to get too much back and forth.  8-A is also part

17  of it.

18         THE COURT:  That, to me, then relies on the

19  testimony.  Let me take another break and look at the

01:57PM 20 jury charge.  And if you want to submit something

21  separate or narrow yours down in light of what we've

22  discussed, I'll take a look at it.

23         MR. LOMONACO:  Thank you, Your Honor, for your

24  diligence on all this.

25         (A brief recess was taken.)

1          THE COURT:  All right.  Thank you, all.  Thank
2    you for the -- for your inputs.

3          Did you have something else you wanted the
4    Court to look at, Mr. Arrowood?

5          MR. ARROWOOD:  Yes, Your Honor.  Defense
6    counsel and I have talked about it.  We do have some
7    proposed agreed-upon language for the Court to consider
8    if the Court wishes to hear it.

9          THE COURT:  I guess, could you get that for me,
02:07PM  10   or do you want to read it?

11          MR. ARROWOOD:  Whichever you'd like.

12          THE COURT:  Go ahead and start by reading it.

13          MR. ARROWOOD:  Sure.  "The following exhibits
14   were entered into evidence:  Government's Exhibit 6-B,
15   8-I, 8-J, 8-K, 8-L, and 8-AA.  As the finder of fact, it
16   is up to you to determine what, if any, weight to give
17   these exhibits."  And that's all.

18          THE COURT:  All right.  Well, I appreciate the
19   parties working on that, but I have concern of directing
02:07PM  20   the jury to specific exhibits in response to the
21   question.  I don't know that I've ever done that in
22   response to a jury question.

23          You know, the Court -- the parties have the
24   evidence before them, and even if they're having some
25   difficulty reaching some conclusions about what the

1  evidence has shown, that's within the province of the

2  jury.

3        So the more I think about it, the more concern,

4  even despite, perhaps, the parties agreeing to that,

5  directing them to certain exhibits.  I just have a

6  concern that the listing of the exhibits, describing

7  them -- maybe that doesn't describe them -- or

8  cross-reference them in any fashion invades the province

9  of the jury to determine for themselves the facts proven

02:08PM  10  during the course of the trial.

11        So I think that's an appropriate task for

12  the -- not an appropriate task for the parties and the

13  Court to undertake in response to this question.

14        So I'm just going to tell them, "Per the jury

15  instructions, it's your job as jurors to decide what the

16  facts are from the evidence you saw and heard here in

17  court."

18        MR. LOMONACO:  That's the best answer.

19        THE COURT:  Any objection from the defendant's

02:09PM  20  standpoint?

21        MR. LOMONACO:  No.

22        THE COURT:  Any objection from the government's

23  standpoint?

24        MR. ARROWOOD:  No, Your Honor.

25        THE COURT:  We'll stand back in recess until

         1   another question arises.

         2            MR. LOMONACO:  We can go back to our offices?

         3            THE COURT:  Yes.

         4            (A recess was taken.)

         5            THE COURTROOM DEPUTY:  All rise.  This

         6   honorable court is again in session.  Please come to

         7   order and be seated.

         8            THE COURT:  All right.  Thank you.

         9            The parties have distributed a message or a

04:13PM  10   question, or a question in a message form, a message

        11   from our jury as follows:  Quote, "Your Honor, we regret

        12   to inform you that the jury has reached an impasse.  It

        13   appears that no amount of additional time will change

        14   the outcome."

        15            I'm going to seek the parties' input, but I

        16   will say:  I've been giving the message some

        17   consideration awaiting your all's arrival in the

        18   courtroom, and the Court, considering the relatively

        19   short length of the trial, as it turned out, considering

04:14PM  20   the length of deliberations, considering the other

        21   factors set forth by the Sixth Circuit, and considering,

        22   in particular, I guess, the strong message,

        23   particularly, quote, "It appears that no amount of

        24   additional time will change the outcome," close quote,

        25   the Court is inclined to find that there is a manifest

1    necessity to discharge the jury without a verdict in

2    this case.  But I'll hear from the parties before I make

3    that ultimate determination.

4            What's the government position.

5            MR. MC KENZIE:  Your Honor, the government

6    respectfully requests that Your Honor give an *Allen*

7    charge to the jury and ask them to continue their

8    deliberations.

9            I understand Your Honor's position and I read

04:15PM  10   the note as well, but, really, they have only been at it

11   for a day-and-a-half, and I suggest that another day of

12   deliberations with the additional charge may lead to a

13   different result, and if it doesn't, we can take it up

14   again tomorrow.

15            THE COURT:  What's the defendant's position?

16            MR. LOMONACO:  Well, Your Honor, they call the

17   *Allen* charge the dynamite charge.  You know, I think it,

18   in my experience, puts some undue pressure on the jury.

19   I mean, they have said basically the magic words that no

04:15PM  20   amount of additional time will change the outcome.  It

21   appears that they're hopelessly deadlocked.

22            I would ask that Your Honor declare a mistrial.

23   It is -- we only put on, you know, one character witness

24   and Professor Hu.  I think there is strong feelings on

25   both sides of the fence on this thing.  And I

anticipated a possible hung jury because of the issues
in this case, and I would ask that we just go ahead and
close the case.

THE COURT: All right. Let me -- I wanted to
get the parties' positions. Let me take about -- a few
minutes to consider what the Court will do in light of
the expression of the parties' positions, and I'll be
back here in just a few minutes.

MR. LOMONACO: Yes, Your Honor.

04:16PM THE COURTROOM DEPUTY: All rise.

(A brief recess was taken.)

THE COURTROOM DEPUTY: This honorable court is
again in session. Please come to order and be seated.

THE COURT: All right. Thank you. First, the
Court meant to mention earlier that pertaining to the
first question of the jury and the Court pronounced how
it was going to answer that question subsequent, via
email, the government made a request related to the
reading of certain testimony in connection with that
04:30PM first question.

The defendant objected and the Court would
decline that request irrespective of its upcoming ruling
related to the second message of the jury.

And with respect to that second message, again,
reading that message, quote, "Your Honor, we regret to

1  inform you that the jury has reached an impasse.  It

2  appears that no amount of additional time will change

3  the outcome," close quote, the Court, upon consideration

4  of the parties' positions, the relevant law, and the

5  jury's unequivocal message of deadlock, the Court finds

6  that there is a manifest necessity to discharge the jury

7  without a verdict in this case.

8       Specifically, that the jury is deadlocked and

9  cannot in good conscience reach a unanimous verdict in

04:31PM 10  this case.

11       The Court specifically notes that the jury has

12  deliberated over the course of two days, a full

13  afternoon the one day and a full day today, versus what

14  was really only slightly more than three days of the

15  actual presentation of evidence.

16       Given these and other factors, the Court finds

17  that continued deliberations would not be beneficial in

18  this case, and, thus, declaring a mistrial is

19  appropriate.

04:31PM 20       More specifically, the Court has looked at

21  several factors in exercising its discretion to declare

22  a mistrial, including, but not limited to, the lack of

23  any objection by the defendant, the jury's opinion,

24  again, unequivocal opinion or statement that it cannot

25  agree on a verdict, the length of jury deliberations,

the length of the trial, the complexity of the issues

presented to the jury, or, in this case, per the

government's closing argument, the simplicity of the

case or the simplicity of the issues presented to the

jury, and the effects of possible exhaustion and the

impact which coercion of further deliberations might be

on the verdict.

        In that regard, the Court has further

considered the government's request for what is known as

the *Allen* charge, as well as the defendant's objection

thereto.  And, in that regard, the Court does note that

in its closing charge to the jury, the Court has already

informed -- already did inform the jury at that time

that it should make every reasonable effort to reach a

unanimous agreement and, among other things, that the

jury should try its best to work out any differences

that may arise during the course of its -- excuse

me -- during the course of its deliberations.

        So in light of all of that, and, again, in

light of the defendant's objection, as well as the

factors already discussed, the Court finds an *Allen*

charge not to be appropriate in this instance and will

declare a mistrial at this time.

        So I'm going to bring the jury back in and so

inform them.  It should take just about three or four

minutes to assemble them and then I'll come back in and

inform and instruct the jury.

Thank you, everyone.

THE COURTROOM DEPUTY:  All rise.

(A brief recess was taken.)

THE COURTROOM DEPUTY:  This honorable court is

again in session of the.

THE COURT:  Thank you.  We'll bring our jury

in.

04:39PM  (Whereupon the following report of

proceedings was had within the presence

and hearing of the jury:)

THE COURT:  Excuse us just a moment.  Everybody

can be seated.

All right.  Welcome back to the courtroom,

members of the jury.  The Court has received your latest

communication from your jury foreperson informing the

Court and the Court has informed and discussed your

communication with counsel for the parties, that being

04:41PM  that you have deliberated as instructed but are unable

to reach a unanimous verdict in this case.

In light of that, in light of the discussion

with counsel, the Court has made a ruling to declare

what's known as a mistrial in this case.  So that is

going to end the case for your purposes and end your

1  service in this case.

2          That being said, and I'll discharge you

3  momentarily, but I do want to take the time, not only on

4  my, the Court's behalf, but on everyone who has been

5  present during the course of this trial, to thank you

6  for your attentiveness during this trial, as well as for

7  your service, and assure you that even though you did

8  not reach a verdict, you have nonetheless performed an

9  important civic duty in your hearing of this case and

04:41PM 10 serving as jurors in this case.

11          And in that regard, I do want to do this:

12  First of all, repeat the communication, quote, "Your

13  Honor, we regret to inform you that the jury has reached

14  an impasse.  It appears that no amount of additional

15  time will change that outcome," close quote.

16          I just want to confirm that everyone concurs in

17  that communication, and, if so, please raise your right

18  hand at this time.

19          Thank you.  Let the record reflect that each

04:42PM 20  juror has raised his or her right hand in an affirmative

21  fashion in response to the polling of the jury by the

22  Court.

23          So, with that being said, let me -- one more

24  important thing:  I want to take this occasion to remind

25  you of a local rule of this Court, Local Rule 48.1,

1    which provides that no attorney, party, or

2    representative of either side may question a juror after

3    a verdict has been returned without prior permission of

4    the Court.  No such permission has been formally

5    requested in this case and no such permission has been

6    granted.  So I wanted to make you aware of this local

7    rule, and the parties and their counsel are aware of

8    this local rule as well.

9         So there should be no contact with you by any

04:43PM 10   attorney or party or representative of either in terms

11   of questioning you about this case unless and until I

12   were to give any such permission.

13        So, with that being said, again, from the

14   Court's perspective, I want to again express my strong

15   appreciation for your service in this case, and in light

16   of all of that, the jury is discharged at this time.

17   Thank you very much.

18        (Jurors excused from the courtroom.)

19        THE COURT:  All right.  The only other thing

04:44PM 20   the Court wanted to do is just remind the parties that

21   the Court has not issued a ruling on the defendant's

22   Rule 29 Motion for Judgment of Acquittal.

23        In light of the juncture at this case, if the

24   Court were to determine that any additional briefing was

25   necessary on that motion, then I would -- we would so

1  inform you.

2          So that all having been said and the jury

3  having been discharged, is there anything else to take

4  up at this time on behalf of the government?

5          MR. ARROWOOD:  No, Your Honor.  Thank you.

6          THE COURT:  On behalf of the defendant?

7          MR. LOMONACO:  No, Your Honor.  What you're

8  saying is:  If you want to consider that motion, you'd

9  give us an opportunity to do further briefing; is

04:44PM 10  that --

11          THE COURT:  If the Court felt further briefing

12  was necessary.

13          MR. LOMONACO:  Yes, Your Honor.

14          THE COURT:  All right.  Thank you.

15  Everyone's -- court is recessed.  Before we do that, I

16  know this was a, quote, "hard fought," close quote,

17  case, meaning that in the legal sense, with respect to

18  from the government's perspective as well as the

19  defendant's perspective.

04:45PM 20          And as I said at the close of trial earlier in

21  the week, the Court appreciates, despite the nature of

22  the litigation, the courtesies extended to each other

23  during the course of the trial, as well as the courtesy

24  extended to the Court and the Court staff.

25          Thank you, everyone.  We're adjourned.

1          MR. LOMONACO:  Thank you.

2          (Which were all the proceedings had and

3           herein transcribed.)

4                       * * * * * * *

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C-E-R-T-I-F-I-C-A-T-E

2    STATE OF TENNESSEE

3    COUNTY OF KNOX

4            I, Teresa S. Grandchamp, RMR, CRR, do hereby

5    certify that I reported in machine shorthand the above

6    proceedings; that the foregoing pages were transcribed

7    under my personal supervision and constitute a true and

8    accurate record of the proceedings.

9            I further certify that I am not an attorney or

10   counsel of any of the parties, nor an employee or

11   relative of any attorney or counsel connected with the

12   action, nor financially interested in the action.

13           Transcript completed and signed on Wednesday,

14   June 30, 2021.

15

16

17

18

                    _____
20                   TERESA S. GRANDCHAMP, RMR, CRR
21                   Official Court Reporter

22

23

24

25